[Civil No. 1119.   Filed April 2, 1910.]

[108 Pac. 231.]

ERNEST E. HUGHES, WILLIAM M. HENNESSY, ALBERT E. ZEH, JAMES E. KINSEY, MARY KINSEY, DANIEL HENNESSY and JOHN FITZGERALD, Defendants and Appellants, v. CADENA DE COBRE MINING COMPANY, a Corporation, Plaintiff and Appellee.

1. CORPORATIONS—PROMOTERS—LIABILITY.—Where promoters of a corporation secretly issue stock to themselves without consideration, their liability to the corporation and other stockholders arises, if at all, out of breach of fiduciary relations which the promoters occupy toward existing stockholders.

2. SAME—SAME—SAME.—Promoters of a corporation occupy a fiduciary position, and they cannot obtain an undue advantage over other stockholders, and they may not obtain any profit to themselves without a full disclosure to the other stockholders.

3. SAME—SAME—SAME.—Neither the stockholders who participate as promoters in fraudulent transactions to their profit, nor their transferees, may complain thereof, but the corporation, acting for other existing stockholders, not participating in and without knowledge of the wrong, may enforce their rights.

4. SAME—SAME—SAME.—Promoters of a corporation who secretly issued stock to themselves without consideration cannot escape liability therefor on the ground that when the stock was issued the corporation had no assets to make the stock valuable, since shares of stock represent a right and interest in the management and profits of a corporation as well as in its assets.

5. SAME—SAME—SAME.—The gratuitous issue of corporate stock without consideration to promoters of the corporation or to those occupying such a fiduciary relation is a fraud on existing stockholders, and is invalid where issued without their knowledge and assent.

6. SAME—SAME—SAME.—Where the question is whether promoters of a corporation while maintaining fiduciary relations to the stockholders made profits from secret dealings with the corporation, the burden is on the promoters to show that the transaction was fair, open, and conducted in the utmost good faith.

7. SAME — SAME — SAME.— Where promoters of a corporation issued stock to themselves without consideration, pursuant to a secret agreement, the court, in the absence of evidence, could find that a stockholder, who resided in a foreign country and never attended any meeting of the corporation, had no knowledge of the fraud.

8. SAME—SAME—SAME.—The act of the promoters of a corporation in issuing stock to themselves without consideration pursuant to a secret agreement is a fraud on the corporation, which it can have remedied in equity, provided it did not assent thereto.

9. SAME—SAME—SAME.—Where the promoters of a corporation procured the issuance to themselves of corporate stock without consideration under a secret agreement when there was no authority for the issuance of stock by any persons formally acting as a board of directors, and when the corporation was under the control of the promoters, the corporation did not assent to the issuance of the stock, unless all the existing stockholders assented to the transaction.

10. SAME—SAME—SAME.—The fact that one stockholder had no knowledge of the secret agreement between the promoters for the issuance to themselves of stock without consideration, and that he never assented to it, fixed the want of assent of all existing stockholders, so that the corporation could sue in equity for the fraud of the promoters, notwithstanding the transfer before suit by such stockholder of his stock to the corporation.

11. COURTS—CONTROLLING DECISIONS.—The decision of the federal supreme court as to the rights of future stockholders of a corporation and the liability of promoters to them fixes the law in the territory of Arizona.

12. APPEAL AND ERROR — HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.—The error in admitting immaterial testimony in a cause tried before the court is not ground for reversal.

13. CORPORATIONS—FRAUD OF PROMOTERS—ACTIONS—EVIDENCE.—Where, in a suit by a corporation against its promoters for the cancellation of stock issued to themselves without consideration, under a secret agreement, the evidence showed that the promoters never acquired any interest in specified property, or in options thereon, and that the stock was not issued in consideration of any interest that they had in the options or the property, and that all money paid for the options or transfers and for the development of the property were paid out of the proceeds of sales of stock made to the public, evidence of the value of the services of one of the promoters in examining such property was properly excluded as immaterial.

14. APPEAL AND ERROR—FINDINGS — CONCLUSIVENESS.—A finding supported by substantial evidence will not be disturbed on appeal, though the preponderance of the evidence is against the finding.

APPEAL from a judgment of the District Court of the First Judicial District, in and for Pima County.   John H. Campbell, Judge.   Affirmed.

The facts are stated in the opinion.

Sutter & Shelley and Herring, Sorin & Ellinwood, for Appellants.

The remedy of a subsequent shareholder who is misled to his damage is personal to himself and cannot be pursued in the name of and for the benefit of the corporation. *Garretson* v. *Crude Oil Co.*, 146 Cal. 184, 79 Pac. 838; *Home Fire Ins. Co.* v. *Barber*, 67 Neb. 644, 108 Am. St. Rep. 716, 93 N. W. 1024, 60 L. R. A. 927, 934; *Clark* v. *American Coal Co.*, 86 Iowa, 436, 53 N. W. 291, 17 L. R. A. 557; *Flagler Engraving Mach. Co.* v. *Flagler,* 19 Fed. 468. The complaint absolutely fails to disclose any cause of action in the plaintiff against the defendants as to the issue of the 550,000 shares of stock or based thereon. The corporation issued the stock to defendants, and cannot itself attack or repudiate the transaction. Clark & Marshall on Private Corporations, secs. 389, 390, 395, and cases cited; Cook on Corporations, 5th ed., sec. 38; *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 434. Where neither the law nor the charter forbids the gratuitous issue of stock, it is not illegal or void *per se*. Where a corporation issues stock for less than its par value or gratuitously, the transaction cannot be attacked by other stockholders who consented or acquiesced; if the stockholders, who are the real beneficiaries, are not entitled to relief, the corporation is not.

Ben Goodrich and George H. Neale, for Appellee.

The gravamen of this action is the fraud of the promoters in obtaining an undue advantage over other stockholders whether existing at the time or subsequently. It arises out of the breach of confidential and fiduciary relations that the promoters occupied toward both existing and future stockholders. That promoters may obtain no profit or advantage to themselves without a full disclosure. "The wrong done by promoters may be regarded either as a wrong to the corporation or to the stockholders therein, whether they became such before or after the transaction complained of, if they acted in innocence of the fraud with which it was tainted. Redress may, therefore, be had either at the suit of the corporation or any of its stockholders. If the suit is by the corporation, it may be for the purpose of setting aside the purchase or

other transactions, or for stock which has been issued without payment; the suit may be to recover the stock." *Pittsburg Min. Co.* v. *Spooner,* 17 Am. St. Rep. 167, note; *Chandler* v. *Bacon,* 30 Fed. 538; *Hayward* v. *Leeson,* 176 Mass. 310, 57 N. E. 656, 49 L. R. A. 725.

"The suit was properly brought by the corporation instead of by its stockholders." *Yale Gas Stove Co.* v. *Wilcox,* 64 Conn. 101, 42 Am. St. Rep. 159, 29 Atl. 303, 25 L. R. A. 90.

KENT, C. J.—The alleged error of the trial court in denying the motion to strike certain portions of the amended complaint will first be considered. The complaint alleged, in substance, the existence of the plaintiff as an Arizona corporation, and the residence of the defendants in the territory of Arizona; that at the time of the execution and adoption of the articles of incorporation the plaintiff corporation had no assets or property whatsoever; that on December 29, 1904, the several defendants, excepting the defendant William O'Neil, agreed among themselves to organize the corporation, and were the promoters thereof, acting at all times in the complaint mentioned for and on behalf of all the defendants, except the defendant William O'Neil; that on January 5, 1905, such defendants met and purported to elect a board of directors composed of certain of the defendants, which board of directors on that date pretended to elect certain of their number as officers of the corporation, and that such directors and officers acted as such directors and officers until the fifth day of October, 1905; that on the date of such pretended election no stock of the corporation had been issued to any person whatsoever, and that by reason thereof the election was void and without authority; that on the ninth day of January, 1905, the corporation by its board of directors entered into certain agreements with the defendant William  O'Neil and one Leslie Coombs, whereby the latter agreed to sell to the corporation certain mining property in the republic of Mexico for a certain amount of cash and for 125,000 shares of stock of the corporation to be issued to each, the corporation being bound by such agreement to perform the obligations of a certain other agreement between one Jacob Biebrich (not a party to this suit) and the defendant O'Neil, the rights of said O'Neil to the said agreement being transferred

to the corporation under certain stipulations and provisions; that the sum to be paid to Coombs under the contract above mentioned was paid to him on January 9, 1905, by certain of the defendants contributing thereto, and a portion of the money being raised by a sale of shares of the capital stock of the corporation; that the defendants so contributing toward such purchase price were repaid from the proceeds of a subsequent sale of stock of the corporation; that the stock of the corporation provided to be issued to Coombs was issued to him on January 9, 1905, being the first stock of the corporation issued; that stock of the corporation was next issued to the said Biebrich in payment of the transfer of his rights under his contract, and that the stock to be issued to O'Neil was also on the same day issued to him; that on the 9th of January, and after the issue of such stock of the corporation to Coombs, Biebrich, and O'Neil, the various defendants (excepting O'Neil) secretly agreed among themselves to set apart and issue to themselves 550,000 shares of the capital stock of the corporation in varying amounts to each, claiming that such stock should be issued to them in consideration of services rendered and money advanced by them to the corporation up to the twenty-ninth day of December, 1904; that no notice of such secret agreement and distribution and issuance of stock was ever given to any person whatsoever or to any stockholder or director of the corporation other than the defendants themselves, and that such agreement and distribution and issuance of the stock was never authorized by the stockholders or directors of the corporation; that, in pursuance of such secret agreement, the said 550,000 shares of stock were issued to the said defendants, and thereafter certain transfers of such stock so issued to them were made by them, but that such transfers were not made upon the books of the corporation, and the several defendants now and ever since have claimed to own the same; that among the transferees of such stock was the defendant O'Neil (and for that reason he was made a party defendant); that all the defendants had knowledge of all the matters set forth in the complaint except the defendant O'Neil; that, in fact, the said defendants did not render any services to the corporation or advance any money to the corporation or give any other consideration whatever for said stock at any time either before

or after its issue; that the value of the stock is fifty cents per share; that by such distribution and issuance of said 550,000 shares of the capital stock of the corporation the corporation was and is prevented from selling such stock in the market or issuing the same, and its assets were thereby depleted, wasted and misappropriated by the defendants; that no entry or other indication of the existence of said contract in relation to the issuance of such stock was ever made on the minutes of the corporate books of the plaintiff corporation, and that said plaintiff corporation had no notice of its existence until three days before the institution of this suit; that at the time the contract was made between the defendants in relation to the issuance of the 550,000 shares of stock all the subscribers to said agreement were occupying a fiduciary relation to the said company and its other stockholders; that, after the issuance of the said stock, the corporation sold to the public 38,935 shares of the balance of its capital stock at prices between twenty-five cents and fifty cents per share; that the public, the purchasers of such stock, were induced to purchase the same by reason of false representations as to the ownership by the corporation of such stock made by the defendants to such purchasers of the stock and also with relation to the title of the mining property before mentioned; that the defendants without authority and in fraud of the corporation and stockholders caused to be paid to certain of the defendants certain sums of money as salaries and compensation, and as commissions on the sale to the public of the stock of the corporation, and further caused to be issued to divers persons certain shares of the stock of the corporation for which no consideration was ever received by the corporation, and further appropriated to themselves certain sums of money, proceeds of the stock for which they have not accounted to the corporation or at all; that until the 5th of October, 1905, the defendants, the pretended board of directors and the pretended officers of the corporation, had possession and control of all the books and papers of the corporation; that after said fifth day of October, 1905, at divers times until the first day of January, 1906, the books and papers of the corporation came into the hands of a certain auditing committee appointed by the board of directors to investigate the affairs of the corporation, which said auditing committee

made a report to said corporation on the thirteenth day of January, 1906, when for the first time the corporation and its stockholders, other than the defendants, were informed of the matters and things before stated as to the appropriation of the 550,000 shares of stock, and that prior to such time the corporation had no knowledge whatever of the claim of the defendants to said stock under said secret agreement, and that three days thereafter this suit was instituted; that in October, 1905, the stockholders of the corporation other than the defendants discovered that the final payment on the purchase price of the mines before mentioned provided to be paid in the contract between Biebrich and O'Neil had not been paid, and that there were not sufficient funds on hand in the treasury of the company to pay it; that certain work required to be performed on or before December 15, 1905, had not been performed, and that certain other requirements to be performed by the corporation under its contracts had not been performed; that in October certain of the defendants resigned as members of the pretended board of directors and as other officers of said corporation, and that thereupon certain stockholders other than the holders of the said 550,000 shares of stock advanced certain moneys on behalf of the corporation to make the expenditures necessary to be made; that in November, 1905, a new board of directors was elected and by the money paid in by such other stockholders, and through funds raised upon a note the new board of directors acquired certain capital stock of a Mexican corporation formed to acquire the mining property in Mexico, which stock has been transferred to the corporation; and that such stock now constitutes the property and assets held by the corporation. The prayer of the complaint was for a decree of court canceling the 550,000 shares of stock issued to the defendants and for an accounting.

The motion of the defendants was in effect a motion to strike out all of the allegations of the complaint except the allegations in relation to the misappropriation of funds of the company by the defendants and their accountability therefor. In other words, the motion went to the striking out of all allegations in the complaint in relation to the issuance of the 550,000 shares of stock to the defendants.

The contention of the appellant in this regard is that the gravamen of the complaint is the gratuitous issue of this stock, and the alleged depreciation and misappropriation of the plaintiffs' assets thereby; that the alleged misrepresentations by the defendants to subsequent purchasers of the stock whereby they were induced to purchase the stock of the corporation contain no allegations that would justify the cancellation of the stock issued to the defendants, as such representations have no connection whatever with the acquisition of the defendants' stock; that the complaint itself alleges that at the time of the issuance of the stock and until the formation of the holding company in Mexico and the transfer of such holding stock to the plaintiff corporation the latter had no property or assets whatever, and that inasmuch as, when the 550,000 shares were issued to the defendants, such shares were without value, the company then having no assets, no wrong was done to the company by the gratuitous issue of such shares; that the theory under which plaintiff asks for the cancellation of the defendants' stock is that, by the distribution and issuance of such stock, its assets were depleted and misappropriated, and that, as unissued shares of stock are not corporate property, a gratuitous issuance of the stock could not result in depleting the assets of the corporation, and, furthermore, as it appears from the complaint that the corporation was a party to the agreement in relation to the issuance of the shares of stock, since the stock was issued by it, the corporation, having issued the stock, cannot itself attack or repudiate the transaction; that, therefore, the complaint failed to disclose any cause of action in the plaintiff corporation as to the issuance of the 550,000 shares of stock, and the allegations in that regard were irrelevant and redundant, and could not be made the basis of any relief for the plaintiff corporation. In other words, the contention of the appellants is that the allegations of the complaint amount at most to the charge that a time when the company had no assets defendants issued to themselves, without a consideration therefor, certain shares of its admittedly worthless stock, and that such issue raises no right of action in the defendant corporation.

In support of their contention the appellants cite a number of cases, and among others the case of *Fogg* v. *Blair,* 139

U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104, on which latter case they greatly rely. There Fogg, the creditor of an insolvent railroad corporation, brought suit against Blair, a stockholder of the company, to compel him to pay the amount due for his stock on a judgment obtained against the corporation, alleging that the delivery and issuance of the stock to Blair was without any consideration, and praying that the certificate issued to Blair be canceled, and that he be decreed to pay to the plaintiff the full amount of his judgment against the corporation. The court sustained the demurrer to the bill because the bill failed to show that the stock, when delivered, had any substantial value; that it was entirely consistent with the allegations of the bill that the stock was absolutely without value when issued to Blair and up until a later time when the property of the company was sold under a decree of foreclosure; that if the stock when issued was without value, no money was due to creditors by its issuance; that as the bill contained no allegations whatever as to the real or market value of the stock, and as there were no allegations of fact that the circumstances attending its delivery indicated bad faith, the demurrer should be sustained.

We think the appellants overlook the fundamental distinction between this complaint and such a bill as in the case of *Fogg* v. *Blair.* There it was a question whether a creditor could complain of a gratuitous issue of stock which had no value, and the court held that, the stock having no value, a creditor was not injured by its issuance. Here the wrong complained of is the secret issuance to promoters of stock of the corporation without consideration given therefor, and the wrong is a wrong, not to a creditor, but to the corporation and its stockholders by such secret advantage so obtained by such promoters. The liability of the defendants, if any, arises out of the breach of the confidential and fiduciary relations that the promoters of a corporation occupy toward existing stockholders. The liability of the defendants under the allegations of the complaint is not, therefore, to be tested by the rules that would apply in the issuance of stock to persons not similarly situated, or, as in the case of *Fogg* v. *Blair, supra,* to a stranger to the promotion or organization of the corporation against whom relief was sought by a creditor; nor by the rules that apply where relief is sought by

a stockholder having bought his stock under misrepresenta-
tions. The allegations of the complaint before us are to be
tested as to their sufficiency by the rule that applies to the
duty of the promoters of a corporation to other stockholders.
Because of such fiduciary relation, the promoters may obtain
no profit or advantage to themselves without a full disclosure
to other existing stockholders, where the promoters of the
company so act as to put themselves in a fiduciary relation
to the company. The question under the allegations of the
complaint is not whether the corporation had assets at the
time the stock was issued. The question is whether the alle-
gations of the complaint show that the defendants were pro-
moters of the company and thus acting in a fiduciary relation
to the company and its stockholders so as to render them
liable for the alleged fraud in making, as promoters, a secret
profit by the issue to them of stock for alleged service not
in fact rendered, without making a full disclosure to the
stockholders or the company; the rule being that such per-
sons, because of their confidential and fiduciary relation, can-
not thus obtain an undue advantage over other stockholders.
While stockholders participating in the transaction cannot
complain, or the transferee of a stockholder participating in
the transaction cannot complain, yet the corporation, acting
for existing stockholders not participating or having knowl-
edge thereof, may, in a proper case, enforce the rights of such
stockholders and remedy the wrong. Cook on Corporations,
5th ed., secs. 28–48, 651; *Dickerman* v. *Northern Trust Co.,*
176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423; *Chandler* v.
*Bacon* (C. C.), 30 Fed. 539; *Densmore Oil Co.* v. *Densmore,*
64 Pa. 43. Nor is the liability of the promoters for such want
of fair dealing relieved because at the time of the issuance of
the stock the corporation had no assets to make such stock
valuable. Shares of stock represent a right and interest in
the management and profits of a corporation as well as in its
assets. The gratuitous issue of stock without consideration
to promoters or those occupying such a fiduciary relation is
a fraud upon existing stockholders, and is invalid if issued
without their knowledge and assent. *Wills* v. *Nehalem Coal
Co.,* 52 Or. 70, 96 Pac. 528; *Hayward* v. *Leeson,* 176 Mass.
310, 57 N. E. 656, 49 L. R. A. 725. We think the allegations
of the complaint in their charge of fraud on the part of the

defendants as promoters of the corporation were sufficient to constitute a cause of action against such defendants, and that the motion to strike was therefore properly denied.

Our conclusion as to the sufficiency of the complaint disposes of the assignment of error that the court erred in overruling the defendants' objection to the introduction of any evidence respecting the issuance of the 550,000 shares of stock, and also the alleged error of the district court in holding the complaint good as against a general demurrer.

The trial court found that the only existing stockholders at the time of the execution of the agreement between the corporation and the seven defendants against whom the fraud is alleged, and at the time when the 550,000 shares of stock were issued, were Coombs and Biebrich and the defendant O'Neil. The court found that Coombs and O'Neil were present at the incorporators' meeting and the first annual meeting of the stockholders on January 5th, at which meetings the issuance of the 550,000 shares of stock to the seven defendants was agreed upon. The court also found that Coombs and O'Neil knew of the making of the agreement of January 9th between the corporation and the seven defendants and of the actual issuance of the 550,000 shares of stock, and made no objection thereto. The appellants contend that, as Coombs and O'Neil acquiesced in the issuance of the stock, they are entitled to no equitable relief which the corporation can enforce; that the plaintiff corporation seeking equitable relief for and on behalf of its stockholders, if it can maintain this proceeding at all, can maintain it solely because of the rights of existing stockholders, and that it is apparent, therefore, that if Biebrich, the only other existing stockholder, was so circumstanced that he could not attack the transaction, the plaintiff corporation cannot maintain the action. This is the position taken by appellant, and we think that under the doctrine of the Lewishon case, to which we shall hereafter refer, it is a sound one. The amended complaint alleged the issuance of the stock to Biebrich prior to the issuance of the defendants' stock. The court found that Biebrich did not know of the making of the agreement or the issuing of the stock in pursuance thereof until three days before the commencement of this suit, and that Biebrich has been continu-

ously a stockholder owning 25,000 shares. This finding of the court that Biebrich did not know of the making of the agreement or the issuing of the stock to the defendants is assigned as error by the appellants. The finding is as follows: "That there is no evidence to show that said Jacob Biebrich knew of the making of said agreement or the issuing of said stock in pursuance thereof until the thirteenth day of January, 1906, and therefore the court finds that the said Jacob Biebrich did not know of the making of said agreement or the issuing of said stock in pursuance thereof until the thirteenth day of January, 1906." The appellants' position is that the court erred in finding that Biebrich did not know of the making of the agreement because there was no evidence to show that he did not know; the contention being that as the complaint alleges that the agreement was secret, and that the corporation and its stockholders had no knowledge whatever of the claim of the defendants to the stock, such facts are essential to the plaintiff's recovery, and, in the absence of any direct evidence of Biebrich's want of knowledge, the fact must be found against the plaintiff, upon whom the burden of proof should be cast; that when proof of negative matter is essential to the successful maintenance of a cause of action this necessitates a negative averment, which the plaintiff has the burden of proving. This general rule does not apply to transactions between directors, promoters, or those maintaining fiduciary relations to the stockholders of a corporation, where the question is as to the profit obtained by persons in such fiduciary relation from their dealings with the corporation. The burden is upon the persons occupying such fiduciary relations to show that the transaction has been fair, open and conducted in the utmost good faith. *Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1; *Barker* v. *Montana Min. Co.,* 35 Mont. 351, 89 Pac. 66; *Sage* v. *Culver,* 147 N. Y. 241, 41 N. E. 513. Under the facts in the case, it appeared that Biebrich had never been within the United States. He was a resident of the republic of Mexico. He had never attended any meeting of the corporation, and there was no evidence that he ever had any knowledge of the transaction in question. We think, under the circumstances in the case, the burden was on the defendants to show knowledge on the part of Biebrich, and,

in the absence of such proof, the court's finding that he did not have such knowledge was justified.

It is further claimed that the trial court erred in excluding evidence offered by the defendants, to the effect that Biebrich had parted with his stock to the corporation prior to the commencement of the suit. The evidence was excluded as immaterial. The contention of the appellant is that, since Biebrich was the only existing stockholder who had no knowledge of the transaction complained of, the corporation can only sue as Biebrich's representative, and there is an identity of interest between Biebrich and the corporation; that if Biebrich, by reason of the fact that he had no knowledge of the agreement or the issuing of the stock, did have a right of action to have the transaction set aside, this right of action lasted so long only as Biebrich remained a stockholder, so that if Biebrich had parted with his stock before suit was brought, and his status was not that of a stockholder, there was no one on whose behalf the plaintiff could on any theory maintain the action. In support of this contention, counsel cite a number of cases to the effect that, in order that a person may maintain suit as a stockholder to set aside or enjoin an *ultra vires* transaction, he must be a stockholder, in fact, when such suit is brought. The cases are not in point. The basis of this suit is the alleged fraudulent action of these seven promoters in their dealings with the corporation. The issue was whether they had by a secret agreement obtained stock of the corporation for which they gave no consideration. The first question is: Was the issue without consideration? If so, it was a fraud upon the corporation which the corporation can have remedied in a court of equity, provided the corporation did not assent thereto. The issuance of the stock by the corporation is not determinative of that assent, first, because, as the court found, there was no authorization of the issuance of such stock by any person formally acting as a board of directors, and, second, because the corporation at the time was under the control and domination of the very persons alleged to have committed the fraud. If, however, all the existing stockholders knew of and assented to the transaction, the corporate assent at the time would have been given, and the corporation, under the doctrine of the Lewishon case,

could not be heard to complain.   The next question, then, is: Was the agreement secret or was it known to all the constituent parts of the corporation, namely, all of its existing stockholders?   The proof showed that it was not, that Biebrich had no knowledge of it, and never assented to it.   That fact fixed the want of assent.   The subsequent transfer before suit of Biebrich's stock to the corporation itself, which was the fact sought to be proved, could in no way alter the fact of the nonassent or the right of the corporation to have the secret transaction set aside as fraudulent.   The evidence, therefore, was properly rejected as immaterial.

The court allowed evidence to be given of statements made to stockholders who purchased their stock subsequent to the transaction complained of, and this ruling is assigned as error. This case was tried prior to the decision of the supreme court of the United States in the case of *Old Dominion Copper Mining & Smelting Co.* v. *Lewishon,* 210 U. S. 206, 28 Sup. Ct. 634, 52 L. Ed. 1025.   That decision is determinative of the law in this jurisdiction as respects the rights of future stockholders and the liability of promoters to them.   The nonassent or want of knowledge of future stockholders or injury to them cannot affect the liability of the defendants in this case under the decision in the Lewishon case.   The court was therefore in error in receiving the testimony complained of. The case was tried, however, before the court, and the testimony received was immaterial.   Its reception was not, therefore, error upon which a reversal of the decision may be predicated.

The defendants attempted to prove by the defendant Fitzgerald the value of his services in examining the mining property referred to in the complaint.   The evidence was excluded as immaterial, and the ruling is assigned as error.   The trial court found that these defendants, prior to the organization of the corporation, had associated themselves together for the purpose of acquiring desirable mining property, and sent Fitzgerald to examine the property in question; but that they never acquired any interest in the property or in the options thereon, and that the 550,000 shares of stock in the corporation was not issued to them in consideration of any interest that these defendants had in the options, contracts or prop-

erty, and that all money paid for such options or transfers and for the development of the property and all other expenses of every kind of said corporation were paid out of the proceeds of sales of stock made to the public, and that none of these defendants ever paid any part of the same or any money whatsoever for or on behalf of the corporation. In view of these facts which were supported by evidence, the immateriality of the evidence as to the value of Fitzgerald's services for the examination made by him is apparent.

It is assigned as error that certain findings of fact are against the weight of the evidence. There being substantial evidence in the record to support the findings complained of, we will not disturb them even if we should agree with the appellants' view, upon which we express no opinion, that the preponderance of the evidence is against the finding. There being conflicting testimony as to the facts found, we shall not disturb the trial court's ruling in that respect.

There are certain other assignments of error as to the insufficiency of the evidence to sustain certain of the findings of fact. We do not consider it necessary to consider these assignments in detail, as, in the view we take of the law, there is sufficient evidence in each case to sustain the finding made.

Under the facts as found by the trial court upon evidence which sustains such findings, the defendants in question caused stock of the corporation to be issued to remunerate themselves for services claimed to have been rendered by them, without disclosing the transaction to all of the then existing stockholders. The court found upon the evidence that these defendants paid nothing to the corporation, rendered no services, and gave no consideration whatsoever for the stock so issued to them. The transaction being a secret transaction, and not having been disclosed to a then existing stockholder, the corporation may maintain such a suit as has been here instituted to set aside the transaction as illegal and fraudulent, and to recover the stock issued. The wrong being a wrong done by promoters to the corporation whereby the promoters have derived in secret an advantage not disclosed to existing members of the corporation, the corporation was the proper person to bring the suit to remedy the wrong. Cook on Corporations, par. 644.

We find no reversible error in the record, and the judgment of the district court is affirmed.

LEWIS and DOE, JJ., concur.   DOAN, J., not sitting.

NOTE.—As to duties and liabilities of promoters to the corporation and its members, see note to *Yale Gas Stove Co.* v. *Wilcox* (Conn.), 25 L. R. A. 90.