[Civil No. 2233.   Filed October 9, 1925.]

[239 Pac. 799.]

THE MILE WIDE COPPER COMPANY, a Corporation, and CHARLES P. REINIGER, Appellants, v. J. P. PIPER, F. W. ROCKSTRAW, GEORGE T. RICHARDS, WAYNE McKEE and ALICE A. TRILL, Appellees.

1. CORPORATIONS—A PROMOTER OF A CORPORATION, EXCHANGING HIS OPTIONS ON MINING CLAIMS FOR ALL OF THE STOCK OF THE CORPORATION, NONE OF WHICH WAS RESERVED FOR SALE TO THE

----

1.  See 7 R. C. L. 73.

29 Ariz.—9

PUBLIC, CANNOT BE MADE TO ACCOUNT FOR PROCEEDS OF THE SALE
OF HIS STOCK.—A promoter of a corporation, who exchanged his
options on mining claims for all the stock of the corporation,
with consent of all present or prospective holders of treasury
stock, and sold the stock to the public, cannot be compelled to
account to the company for the proceeds of such sale by pur-
chasers from promoter of his personal stock, where there was no
fiduciary relationship between corporation and promoter, and
where, since none of the original treasury stock was reserved for
sale to the public, nor a new issue contemplated or made, the
exchange was valid.

2. CORPORATIONS — REMEDY OF PURCHASER OF STOCK CLAIMING TO
HAVE BEEN DEFRAUDED BY PROMOTER IS AN ACTION OF DECEIT
AGAINST HIM.—The proper remedy for purchasers, claiming to
have been defrauded in a purchase of stock from a promoter
obtaining it in a valid exchange with corporation, is by action
of deceit against promoter, and not by action to declare the
proceeds of the sale of stock to be held in trust for the company.

See (1) 14 C. J., p. 293.    (2) 14 C. J., p. 707.

APPEAL from a judgment of the Superior Court
of the County of Pima.   F. H. Lyman, Judge.   Judg-
ment reversed and cause remanded.

Messrs. Rice & Mathews and Mr. Gerald Jones, for
Appellants.

Mr. Ralph W. Langworthy and Messrs. Curley &
Pattee, for Appellees.

LOCKWOOD, J.—J. P. Piper, F. W. Rockstraw,
George T. Richards, Wayne McKee and Alice A. Trill,
hereinafter called plaintiffs, filed this suit in the su-
perior court of Pima county, against Charles P.
Reiniger, hereinafter called defendant, and the Mile
Wide Copper Company, a corporation, hereinafter
called the company.   The complaint sets up the fol-
lowing allegations in substance:

About January 21st, 1916, defendant, in pursuance
of a plan which he had previously formed to secure

2.  See 7 R. C. L. 76.

options on certain mining claims and to organize and
promote a corporation for the purpose of selling
and transferring said options to the corporation at
a large secret profit to himself, and inviting the pub-
lic to purchase the stock of the corporation and con-
tribute all necessary funds for its purposes, took the
options, paying therefor the sum of $1,000, which was
later repaid him from the funds of the company; the
deferred purchase price being $75,000.   Immediately
after he commenced a campaign for the sale of stock
in the corporation about to be organized, receiving
under a contract of sale for such stock, made before
he had expended any money on the property, about
$40,000.   He then organized the corporation, which
is the company defendant herein, paying the expenses
of organization out of the funds received by him
under the contract of sale of stock.   The capital stock
of the corporation was $5,000,000, divided into
1,000,000 shares.

At the first organization meeting of the stockholders
of the corporation, there were present defendant,
L. E. Jettinghoff, M. D. O. Fuller and R. R. Schweit-
zer, none of whom, it was alleged, were *bona fide*
stockholders of the company, and the latter three
were merely dummies acting for and under the di-
rection of defendant.   These parties caused them-
selves and one Morford, an employee of defendant, to
be chosen as directors of the corporation, and there-
after, acting as a board of directors, entered into a
contract whereby the company purchased from de-
fendant the above-described options, paying him
therefor all of the capital stock of the corporation,
except one share for each of the directors.   There-
after defendant caused to be transferred to one
Charles W. Freeman 80,000 shares of the stock so
issued to defendant, which the latter had theretofore
contracted to deliver to Freeman for the $40,000 above

referred to, and placed a large block of the remaining stock in the hands of certain stock brokers, named Lyon and Singer, of Pittsburgh, Pa., for sale to the general public. Some 140,000 shares of the stock so placed was sold to various investors, among them being plaintiffs, under the representations, made by Lyon and Singer, that it was treasury stock, and that the proceeds, less a fair commission, were to be turned over to the company and used for development purposes, the purchasers relying on such representations when they bought the stock, when, as a matter of fact, it was not treasury stock, but a portion of that issued to Reiniger as above stated, and the company received only half the proceeds of the sales, the balance, less commissions, going to Reiniger.

In November, 1919, defendant, as president of the company, called a special meeting of the stockholders, and by use of his stock aforesaid elected a board of directors who were not *bona fide* stockholders, but merely the tools of defendant, and acted at all times under his directions and hostile to the only *bona fide* stockholders, who were the purchasers of stock through Lyon and Singer. Thereafter, the options having expired, without being exercised by the company, defendant with funds secured by the sale of stock aforesaid, purchased certain interests in part of the claims formerly under option to the company for himself, and also with similar funds bought a large amount of valuable machinery on the property, and converted to his own use personal property of the company to the value of $25,000.

Plaintiffs alleged that, by reason of the control of the board of directors by Reiniger as aforesaid, it would have been useless to ask them to bring suit on behalf of the corporation to compel Reiniger to account to it, so they as stockholders brought this suit, and asked that defendant be held to stand in a

fiduciary relation to the company, that the issue of stock to him be declared void, that the stock still held by him be delivered up and canceled, and that he be compelled to account to the company for the benefit of the *bona fide* stockholders therein, for all the money received by him through the sale of stock, and the property purchased with the proceeds thereof, and the property he was alleged to have converted, for an attorney's fee, and general relief.

Defendants demurred to the complaint, and also answered. The answer, in substance, admits the sale of the options to the company in exchange for all its capital stock, but alleges that the property was purchased by Reiniger with his own funds and was of great value. It further sets up that the sale was approved by the board of directors of the company and all the stockholders thereof at the time of the sale, and that no secret profit whatever was made by the sale, nor indeed any profit, except such as he made later through the sale of the stock. It further denies, both generally and specifically, every allegation of the complaint which might impose any liability on Reiniger, or make him a trustee for the benefit of the company. Since both pleadings are voluminous, we shall not encumber this opinion with either the substance or language thereof, except so far as may be necessary for a proper consideration and disposition of the action.

The matter was originally presented to a jury, but at the close of the evidence the jury was discharged, in accordance with a stipulation, and the case submitted to the court for its decision. The trial judge, who was not the regular judge of the superior court of Pima county, filed his opinion under paragraph 346, Revised Statutes of Arizona of 1913 (Civ. Code), and also findings of fact and conclusions of law, and, as he retired from the trial bench immediately on these being filed, the formal judgment was rendered

by the regular judge. After the usual motion for new trial was made and overruled, this appeal was taken.

There are some thirty-five assignments of error, raising a number of legal questions, some of which are of great interest as a matter of practice, but, since there is a principle of substantive law, going to the very gist of the action. and decisive thereof, we consider only the one issue.

It appears, from the undisputed evidence in the case, that Reiniger, at the time of the organization of the defendant corporation, was the owner of certain options of purchase on some mining claims. For these he had paid several thousand dollars, and it was his intention to organize a corporation, exchange the options for all the stock of the company, and then proceed to sell the stock, so taken by him, to the general public. A friend of his, named Freeman, was so impressed with the value of the property that he agreed, even before the company was organized, to purchase from Reiniger 80,000 shares of the stock which Reiniger told him he was to get for the options, giving therefor $40,000 in promissory notes, which were afterwards duly paid.

In accordance with his intention as above set forth, the corporation was duly organized, a board of directors chosen, and the board agreed to exchange all the stock of the corporation, except one share for each director, for the options in question. At the time of this agreement, there were no other stockholders, none of the capital stock was reserved for sale as treasury stock, and there was no intention of increasing the capitalization, so that other treasury stock could be issued. The stock which Freeman agreed to purchase was not treasury stock, to be subscribed for, but was, to his knowledge and of his intention, a direct purchase from Reiniger of some of the latter's prospective stock.

The single question on which the case must turn is whether or not the agreement between Reiniger and the company was void or valid. If it was the former, of course he was a trustee for its benefit, and must account to it for any money or property received by or through the sale of stock. *Frame* v. *Mahoney et al.,* 21 Ariz. 282, 187 Pac. 584.

If, on the other hand, the transaction was a valid one, it is obvious that Reiniger in no way occupied a fiduciary relation towards the company, so far as the sale or disposition of the stock is concerned, and therefore is under no obligation to account to the company for its proceeds.

We have, then, the proposition, "May a person owning property, regardless of its value, organize a corporation and exchange that property for practically all of the capital stock, the corporation having at the time no other assets than its stock, and all of the present or prospective stockholders who had taken or were to take treasury stock assenting to the exchange?"

It would seem that as far as this jurisdiction is concerned, the question is foreclosed. *Old Dominion Copper M. & S. Co.* v. *Lewisohn,* 210 U. S. 206, 52 L. Ed. 1025, 28 Sup. Ct. Rep. 634; *Hughes* v. *Cadena De Cobre M. Co.,* 13 Ariz. 52, 108 Pac 231. And indeed counsel for plaintiffs in the oral argument admitted that, if we adhered to the rule announced in those cases, no such action as this could be maintained. He contended, however, most strenuously that we should rather follow the doctrine laid down in *Old Dominion Copper M. & S. Co.* v. *Bigelow,* 203 Mass, 159, 40 L. R. A. (N. S.) 314, 89 N. E. 193, which, he claims, would make defendant Reiniger a trustee for the benefit of the corporation. We do not think it is necessary for us to consider which is the better rule, for the reason that, even under the doc-

trine in the Bigelow case, plaintiffs cannot recover on the facts in this action. The following quotation from the opinion therein will show this to be true:

"Notwithstanding this fiduciary relation the promoter may sell property to the company which he is promoting. But in order that the contract may be absolutely binding he must pursue one of four courses; (a) He may provide an independent board of officers in no respect directly or indirectly under his control, and make full disclosure to the corporation through them; (b) he may make a full disclosure of all material facts to each original subscriber of shares in the corporation; (c) he may procure a ratification of the contract after disclosing its circumstances by vote of the stockholders of the completely established corporation; (d) he may be himself the real subscriber of all the shares of the capital stock contemplated as a part of the promotion scheme. The defendant does not contend upon this report that either of the first two courses was followed. He does not rest his claim chiefly upon the third and fourth courses. As applied to the facts of this case these two come to the same thing, for the reason that on the findings of the single justice the defendant and his associate were subscribers for only 130,000 shares out of a total of 150,000 and in the light most favorable to them they held all the shares which had been issued at the time of the ratification, but not all which it was proposed to issue as a part of the scheme of promotion. The point to be determined, therefore, is whether the promoter is immune from liability if he and his associates are owners of all the issued stock at the time of the act complained of, although intending as a part of their plan the immediate issue of further stock to the public without disclosure, and whether, while a substantial portion of the stock intended to be issued to the public remains unissued, a vote of ratification of the breach of trust will protect him. A review of the authorities seems to demonstrate that there is a liability of the promoter to the corporation when further original subscribers to capital stock contemplated as an essential part of the scheme of promotion came in after the transaction complained

of, even though that transaction is known to all the then stockholders, that is to say, to the promoters and their representatives.''

There is no pretense the evidence of this case even suggests that there was any original treasury stock sold to the general public or that a new issue of stock was ever made. Such being the fact, the corporation was not in a position to question the contract of exchange, and, if it could not, neither could subsequent purchasers, not, let it be remembered, of treasury stock as original subscribers, but of Reiniger's personal stock, on its behalf.

As a matter of fact, plaintiffs herein have mistaken their remedy. If defendant Reiniger, either directly or through his agents, has been guilty of actionable deceit in inducing plaintiffs to purchase his stock, they may of course sue him individually. If other parties, not such agents, have defrauded them, an action lies against such persons. But this is a suit to declare a trust in favor of the company in the proceeds of certain stock alleged to have been illegally issued, and since, under either the Lewisohn or Bigelow cases, the stock in question herein was validly issued to Reiniger, there can be no such trust.

For the foregoing reasons, the judgment is reversed and remanded to the superior court of Pima county, for proceedings not inconsistent with this opinion.

McALISTER, C. J., and ROSS, J., concur.