[Civil No. 2681. Filed April 9, 1928.]

[266 Pac. 6.]

C. I. T. CORPORATION, a Corporation, and A. J. RENAUD, Appellants, v. THE FIRST NATIONAL BANK OF WINSLOW, a Corporation, Appellee.

Mr. P. A. Sawyer, for Appellants.

Mr. C. D. McCauley, for Appellee.

ROSS, C. J.—This action is over the ownership of a certain second-hand Essex automobile, both parties deraigning title from one P. H. Brooks, the owner and operator of a garage in Winslow, Navajo county, Arizona. On November 21st, 1925, Brooks sold the car to one Ed L. Smith for $558.19, who, according to the contract, paid on it by " 'trade-in' allowance" $200, and agreed to pay the balance in twelve deferred monthly payments of $29.85, the title to be and remain in seller until purchase price was fully paid, with the usual terms of conditional sales contracts. On the same day and as a part of the same transaction Brooks assigned the conditional sales contract and all right, title and interest in the car to the defendant C. I. T. Corporation, for a consideration of $300 to him in hand paid. Smith, the buyer, represented in the "purchaser's statement" and in the sales contract that he was a resident of Payson, Gila county, and the contract was sent to that county for filing, and was filed within ten days after its execution; but it was not

filed in the county recorder's office of Navajo county within the ten days, or at all.

Whether Smith ever took the car to Gila county or not is in doubt from the evidence. One witness stated, and this is the only evidence bearing on that point, that it "was there in the possession of Mr. Smith in Gila county, or in some other place. I understood from Mr. Brooks that Mr. Smith was in the vicinity of Winslow although Payson, Gila county, was his residence." Another witness stated that Smith bought the car "and left it on the floor."

On November 28th, 1925, R. C. Kaufman, who was the president of the First National Bank of Winslow, bought of Brooks eleven automobiles, paying therefor, according to the record, the sum of $1,000, and the Essex in dispute was one of such cars. At the time this car was on the sales floor of the Brooks' garage mingled with other cars and had on it no license plate. Before making the purchase Kaufman caused the records of Navajo county to be searched, and found nothing on file or of record affecting the title to the Essex car. When Kaufman bought the eleven cars Brooks was indebted to the First National Bank in a large sum of money, and the money he realized on such sale to Kaufman was applied on his indebtedness to the bank.

In April, 1927, no payments having been made by Smith upon his contract, the C. I. T. Corporation took possession of the car, and this action is one of replevin by the First National Bank as assignee of a sales contract between Kaufman and one Francisco, who bought the car under a conditional sales contract from Kaufman.

The case was tried to the court without a jury, and judgment went for plaintiff. Defendant appeals, and in its assignments claims the court erred: (1) In overruling its demurrer to the complaint; (2) in rendering judgment for plaintiff, as the proof

failed to support such judgment; and (3) in rendering judgment for plaintiff, because it was contrary to the weight of the evidence.

The first assignment is not argued, and, under the rules, will be treated as abandoned.

The third assignment calls on the appellate court to weigh the evidence. This we will not do. That has been uniformly held to be the province of the trial judge when acting without a jury, or of the jury when one is had. *Korrick* v. *Robinson*, 20 Ariz. 323, 180 Pac. 446; *Moore* v. *Blackstone*, 20 Ariz. 328, 180 Pac. 526; *Henry* v. *Mayer*, 6 Ariz. 103, 53 Pac. 590; *Agard* v. *Scott*, 13 Ariz. 165, 108 Pac. 460.

There is left for consideration the question as to whether there is any substantial evidence to support the judgment. It is undisputed that the C. I. T. Corporation in good faith bought and paid for the conditional sales contract from Brooks to Smith, and, that being true, at the time the former undertook to sell it to the plaintiff's assignor he had absolutely no title or interest in the car. *Kearby* v. *Western States Securities Co.*, 31 Ariz. 104, 250 Pac. 766. Under the conditional sales contract the vendor retained the title to the car, and upon its assignment he transferred that title and all interest therein to his assignee. If the plaintiff's assignor, then, got any title when he bought the car from Brooks, it was because it was in Brooks' possession on the floor of salesroom with every *indicia* of ownership, and because plaintiff's assignor in good faith, acting upon such appearances of ownership in Brooks, gave him a valuable consideration therefor.

It is seen that this has to do with the rights as between the assignee of the conditional vendor and the rights of a subsequent purchaser from such vendor. The provision of the statute for the filing of conditional sales contracts has for its purpose the protection of the seller and his assignee against pur-

chasers and creditors of the buyer. Section 5, chap. 40, Laws 1919. Under the conditional sales statute, if the contract or a copy thereof is filed in the office of the county recorder of the county in which the property is first kept for use by the buyer within ten days after the making of the sale, the reservation of the property in the seller is good as against everybody. Indeed, such recording is only necessary to protect the conditional vendor against purchasers and creditors of the buyer. Section 4 of such act states:

"Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer, shall be valid as to all persons, except as hereinafter otherwise provided."

—and then follows the provision for recording, as above stated.

In *State Bank of Black Diamond* v. *Johnson,* 104 Wash. 550, 3 A. L. R. 235, 177 Pac. 340, under a state of facts the legal effect of which is the same as under the facts here, the court said:

"However, let us concede that Johnson and Dahl had no such knowledge as would put them upon inquiry leading to their discovering the bank's claim of title, in what position do we find them? Simply this, they purchased the automobile from one who had no title whatever therein. They acquired no more title or interest in the automobile when they purchased it from Grant-Coffin-Campbell Company, Campbell Motorcar Company, or Edward P. Campbell than as if they had purchased it from one who had stolen it; in which event, of course, they would have acquired no title whatever as against that real owner.

"Some contention is made rested upon the fact that Grant-Coffin-Campbell Company was a corporation engaged principally in the sale of automobiles, and that the automobile was purchased by Johnson and Dahl at its place of business, it being then in possession and the apparent owner of the automobile. It is true that possession of personal property is some

evidence of title thereto by the one in possession of it; but, in order to sustain Johnson and Dahl's claim of title in this case, it would be necessary to go to the extent of invoking in their favor the doctrine that a sale in market overt vests good title in the vendee though the vendor had no title, applicable under certain conditions in England, but not recognized as the law in this country. 35 Cyc. 358; 2 Bouvier's Law Dict. (Rawle's 3d Revision), 2095, If the vendor has no title, the vendee acquires none; unless the one having title has by act or neglect estopped himself from disputing the vendee's claim of title so acquired. It seems plain there is no such estoppel here."

In the Black Diamond case the purchaser from the conditional vendors it appears was paying a present consideration, and we have thus far considered the present case upon the assumption that Kaufman was the real purchaser, paying for the cars his own money. However, the evidence strongly indicates that he was simply acting as the agent of the bank to collect of Brooks a pre-existing indebtedness to the bank. The legal situation is not changed whether a present cash consideration was paid by Kaufman or whether the transaction was one for the collection of a pre-existing debt. The title of the automobile was in the defendant; it, and not Brooks, was the owner of the conditional sales contract and of the car. Brooks had no title or interest in the car when he attempted to sell it to the plaintiff, and the defendant neither actively nor negatively did anything to mislead the plaintiff or to induce the plaintiff, or its assignor, to buy the car from Brooks. If it had been necessary to file the conditional sales contract or a copy thereof in the office of the county recorder of Navajo county to protect the defendant as assignee of the conditional vendor against the acts of the latter, as also against purchasers and creditors of the buyer, the ten days' time allowed

by the statute to file it had not expired when plaintiff examined the record and bought the car from Brooks.

The facts in *Kearby* v. *Western States Securities Co., supra,* differ from the facts in this case. In the Kearby case the conditional vendor kept the car and used it as a demonstrator, while bearing a dealer's license plate, with the knowledge of the Securities Company, holder of the conditional sales contract, and we held the Securities Company was estopped from claiming the car against the innocent buyer from the conditional vendor. Here the C. I. T. Corporation had no knowledge whatever that the conditional seller had repossessed the car, or that the buyer, Smith, did not have it in Gila county. Again in the Kearby case the sale of the car was "in the ordinary course of the business" of a dealer who though unknown to the purchaser was about to fail. It was not a bulk sale of eleven cars for a bulk consideration of $1,000, as in the present case, from a dealer heavily indebted and in the act of closing out, all of which was known to the purchaser, Kaufman.

We think that the judgment should be reversed and the cause remanded, with directions that judgment be entered for the defendant C. I. T. Corporation.

LOCKWOOD and McALISTER, JJ., concur.