185 P.2d 304

**RUTH et ux. v. RHODES.**

No. 4882.

Supreme Court of Arizona.

Sept. 29, 1947.

Laney & Laney, of Phoenix, for appellants.

Hill, Robert, Hill & Price, of Phoenix, for appellee.

UDALL, Justice.

Plaintiff (appellee) Earl Griffith Rhodes, a minor of the age of sixteen years, acting by his guardian ad litem Trancy Clarenton Rhodes (his father), brought this tort action against defendants (appellants) W. O. Ruth, who was then a member of the Arizona Highway Patrol, and his wife Nellie Ruth. The claim was for damages in the sum of $15,000 purportedly suffered by plaintiff as the result of an automobile accident alleged to have been caused by the negligence of defendant W. O. Ruth. The verdict of the jury awarding damages in the sum of $7500 found "for the plaintiff and against the defendants and each of them." The minute order which constituted the judgment

was joint and several thereby fixing, among other things, an individual liability upon defendant Nellie Ruth. From the judgment and the court's denial of their motion for a new trial defendants take this appeal.

The following undisputed facts are revealed by the evidence: The evening of May 13, 1944 at about 9:30 p. m., Ruth was patrolling the Buckeye Road when, by short-wave radio, he received a message at Tolleson to proceed with all dispatch to Buckeye where two men had been killed and others injured in an automobile collision. It was while on his way to this accident, and at a point on Highway 80 in Maricopa County near the Goodyear Plant that defendant attempted to pass a pickup truck proceeding in the same direction and driven by plaintiff's father. The father, his wife and a daughter were riding in the cab of the truck while plaintiff was riding in the rear. The right front side of the patrol car collided with the left rear corner of the truck causing both vehicles to leave the highway. Plaintiff was thrown violently to the pavement suffering a severe compound comminuted fracture of the leg and other abrasions. After many weeks of hospitalization and repeated surgery the injured leg was saved but, as the result of this accident, it is one and five eighths inches shorter than the other.

There is sharp conflict in the testimony as to the cause of the accident. Patrolman Ruth testified that his siren was going constantly and that he was playing a red spotlight upon the truck after it came into his line of vision some 350 feet distant; that the driver of the truck pulled over to the right side of the road with the two right wheels on the shoulder and after almost coming to a stop in this position, started to make a sudden left-hand turn across the road and into the path of the patrol car, but upon getting practically back to the center of the highway, he again swerved sharply to the right, this time but a moment before the collision. Ruth said that he was going at a speed of about 60 miles per hour and emphatically denied that he was guilty of any negligence laying the entire responsibility for the accident upon plaintiff's father.

The occupants of the truck, on the other hand, testified that they heard the patrolman admit he was going 90 miles per hour. They all deny hearing the siren or seeing the red spotlight or, in fact, knowing of the approach of the patrol car until they heard the screeching brakes just a moment before impact. They claim they were hit just as the truck was turning left into a side road where a relative lived. Plaintiff's father stoutly denied that he told the patrolman after the accident that he had heard the siren and had seen the spotlight but thought that he had time to make the turn. There are twelve assignments of error which will be considered seriatim.

At the outset defendants assign as error the trial court's denial of their motion for

summary judgment, and later its refusal to direct a verdict in their favor. Both motions were predicated upon the proposition of law that an officer of the State of Arizona is not liable in tort for negligence on his part while in the performance of the governmental functions of the state. Defendants rely primarily upon the holdings in State v. Sharp, 21 Ariz. 424, 189 P. 631; Hartford Accident & Indemnity Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328; Grande v. Casson, 50 Ariz. 397, 72 P.2d 676; and Larsen v. County of Yuma, 26 Ariz. 367, 225 P. 1115, where this court announced the principle that neither the state, nor any political subdivision thereof, was liable for the negligence of its employees or agents, occurring in the discharge of some purely governmental function such as the construction of an addition to the capitol building or the construction and maintenance of public highways. The Larsen and Grande cases, supra, go a step further and exempt from liability, under the facts there shown, public officers (who were also parties defendant to the tort action) for their alleged negligence in the building and maintaining of public highways. However it must be clearly pointed out that the Larsen and Grande cases have reference to a very limited and specific factual situation, i.e., the personal tort liability of state and county officers *in regard to construction defects or failure of proper upkeep of bridges and highways.* In this field, although there is now de-

veloping a split of authority together with an increasing number of refinments and exceptions, the Larsen and Grande cases (at the time they were decided certainly, and even now) are aligned with at least the numerical weight of the decisions, 9 C.J., Bridges, § 69, 11 C.J.S., Bridges, § 62, whereas the general rule applicable to the case at bar concerning *the personal tort liability of state officers generally* is quite uniformly to the contrary. 59 C.J., States, sec. 228; Florio v. Schmolze, 101 N.J.L. 535, 129 A. 470, 40 A.L.R. 1353, 1358. A leading case in point is Florio v. Schmolze, 101 N.J.L. 535, 129 A. 470, 472, 40 A.L.R. 1353, where the rule is stated as follows:

"We think that a sound public policy requires that public officers and employees shall be held accountable for their negligent acts in the performance of their official duties, to those who suffer injury by reason of their misconduct. Public office or employment should not be made a shield to protect careless public officials from the consequences of their misfeasances in the performance of their public duties."

And almost squarely in point is sec. 888(c), vol. 4, Restatement of the Law of Torts and illustration number 3 there following:

"(c) Public officers. While there is no immunity by the mere fact that one is a public officer, there are many situations where a person may be protected by the command of a superior or the existence of

a privilege held by him because of his official position or because of a privilege held by another on whose account he acts (see sec. 890). Where, however, the other has not a privilege but has merely an immunity from civil liability, as is the case of a municipal corporation which is not liable for tortious conduct committed by its servants while in the performance of a governmental function, the person who acts does not share the immunity. * * *"

"Illustrations: (3) A, the fire chief, drives a municipal car to a fire at an unnecessarily dangerous rate of speed, thereby causing a collision with and harming B. A is subject to liability to B. although the municipality by whom he is employed is not liable."

Finally as the emphasized portion of our below quoted statute (sec. 66-112, A. C. A. 1939) demonstrates, it was never the intention of our legislature to give complete immunity to highway patrolmen in the exercise of their office:

"The driver of a vehicle upon a highway shall yield the right-of-way to police and fire department vehicles when the latter are operated upon official business and the drivers thereof sound audible signals by bell, siren or exhaust whistle. *This provision shall not relieve the driver of a police or fire department vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of such right-of-way."*

■ It is true that a great many of the highly contradictory and irreconcilable rules surrounding the extent of immunity from tort liability of governments and the officers thereof are based upon historically interesting but by now highly artificial distinctions having little present-day foundation in either fact or reason. See Prosser on Torts, Immunities, sec. 108; Edwards Jennings, Tort Liability of Administrative Officers, 21 Minn.L.R. 263-314. But in the light of our statute 66-112, A.C.A. 1939, and the unanimity of authority upon this particular phase of tort liability, it is clear that the trial court did not err in denying the motion for summary judgment.

The second assignment of error attacks the ruling of the court "* * * in sustaining the objection of plaintiff's counsel to defendants' offer to prove by the witness Dysart Murphy that at the scene of the collision in the presence of Trancy Clarenton Rhodes (father of the injured minor), W. O. Ruth said (referring to Mr. Rhodes), 'Why he admits that he heard my siren and saw my red light but he said he thought he had time to make it', and that Mr. Rhodes did not in any way deny that assertion by Ruth."

■ It is the law that if a statement is made in the presence and hearing of another in regard to facts adversely affecting

his rights, and he makes no reply, evidence of such statement and his non-denial thereof is admissible both for impeachment purposes (where he had thereafter testified to the contrary) and to show a tacit admission of the facts stated (where the truth of the facts embraced in the statement is within such other person's knowledge and the circumstances are such as naturally call for a reply if he did not intend to admit such facts).

■■ We have carefully examined the transcript of evidence on this point, and, without quoting the testimony, we are of the opinion that the ruling of the trial court was proper because defendant did not lay a proper foundation for invoking this salutary rule. The requirements that first must be met are succinctly stated in 31 C.J.S., Evidence, § 295b, as follows:

"In order that evidence of silence may be admissible as an admission it is essential that the statement of fact be made in the hearing of the party. Further, in order that any significance may attach to a party's failure to reply to a statement, generally it must be made to appear that he actually heard it; a statement is not admissible where the party sought to be affected thereby was unable to hear it, as where he was deaf or unconscious. The mere fact that the party was within hearing distance of the speaker is not sufficient, unless the situation was such that he must necessarily have heard."

See also Gerulis v. Viens, 130 Me. 378, 156 A. 378, 76 A.L.R. 1387.

■ The next three assignments of error claim that defendants were prejudiced by the court's action: (a) In unduly limiting their cross-examination of Rhodes, Sr., as to whether the patrolman's siren was blowing, (b) in sustaining an objection to their cross-examination of Dr. Lytton-Smith as to the cause of the injury to the plaintiff's leg, and (c) in the court's own cross-examination of the witness Otto Hollingshead. A careful reading of the transcript convinces us that there is no merit to these assignments. Counsel for defendants, insofar as these matters are concerned, was not in any way prevented from a full and fair cross-examination of the witnesses Rhodes and Lytton-Smith as to the facts bearing upon the issues in the case. Nor was the court's own examination of the witness Hollingshead improper or prejudicial. In the case of Tom Reed Gold Mines Co. v. Brady, 55 Ariz. 133, 99 P.2d 97, 99, 127 A.L.R. 905, the rule as to the trial judge's interrogating a witness, which we think was met in the instant case, was stated as follows:

"Of course the trial judge's attitude as between litigants in his court should be one of complete impartiality, and while he may ask questions of witnesses he should be extremely careful not to give, either by intonation of voice or character of question,

the impression to the jury that he leans to one side or the other. Ordinarily, each side to litigation will insist upon its right to develop its case in its own way, and that is as it should be, but if it appears to the court that further questions to a witness may give the jurors a better and clearer understanding of what they are to decide, we can see no impropriety in the court's asking such questions. * * *"

See also 53 Am.Jur., Trial, sec. 75.

Defendants assign as error the fact that the trial court permitted "counsel for the plaintiff to cross-examine defendant * * * about his appearance before and statements made to a Legislative Investigating Committee" claiming that this cross-examination "was calculated to cause the jury to believe that the Arizona Legislature would in some manner indemnify defendants against any damages the jury might award against them."

It is true that this court will not countenance "cross-examination by insinuation" the sole purpose of which is to leave an impression with the jury of a fact or state of affairs that is not proved, or to get before the jury by indirection that which would not be directly admissible. See State v. Singleton, 66 Ariz. 49, 182 P.2d 920. But here there was, instead, a clear and successful attempt to impeach the credibility of defendant's testimony in regard to the claimed good condition of the brakes on the patrol car by showing his prior incon-

sistent statements in this regard. Not only is this admissible, 70 C.J., Witnesses, sec. 1240, but, in addition, there was nothing to suggest that the prior inconsistent statements had been made before a committee that would reimburse him. Instead, they appeared to have been made in an anteroom to but a few committee members during a time when Ruth was testifying before the committee on other matters. Nor is it unnatural that a member of the Highway Patrol should appear before a committee on Highways and Bridges. On the other hand it would be quite strange if such a committee had for its purpose in meeting, the reimbursing of a single patrolman for an accident he had had for which the state was not liable. We do not believe that the jury was so misled.

Three assignments of error attack the correctness of specific instructions given by the court to the jury. We deem it unnecessary to set these instructions out at length. However, as to plaintiff's proposed instruction number 2 (assignment 8) it appears that counsel for defendants in effect withdrew their objection after the court had modified and corrected it as per counsels' suggestion. And, as no objection was made thereto after the correction by the court, Rule 51 (sec. 21-1019) would preclude the defendant from being now heard to complain. As to the objections to two other instructions that were given as well as the refusal of the court to give defendants' requested instruction number three

we hold that no error was committed for the reason that in considering the instructions as a whole the learned and experienced trial judge fully and correctly informed the jury as to all phases of the law governing the case. Southern Arizona Freight Lines v. Jackson, 48 Ariz. 509, 63 P.2d 193; Humphrey v. Atchison, T. & S. F. Ry. Co., 50 Ariz. 167, 70 P.2d 319.

Further, defendants claim as error the failure to give their requested instruction number three which was based upon our code section 66-105. This section entitled "When speed limit not applicable" provides in part that:

"The speed limitations set forth in this article shall not apply to vehicles when operated with *due regard for safety* under the direction of the police in the pursuit or apprehension of persons * * * suspected of any violation of law; * * *. *This exemption shall not however protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others."* (Emphasis supplied.)

Defendants contend that this statute requires a higher degree of negligence or, conversely, a lesser degree of care on the part of a patrolman in order to make him liable under the law than is required by our code section 66-112 concerning the right of way, and exceptions applicable to police and fire vehicles, upon which latter section one of the given instructions was based. Defendants further claim that an added instruction which expressly explained that a patrolman must use "that degree of care which a reasonably prudent man would have used in the discharge of official duties of like nature and under like circumstances" (while at the same time explaining that a patrolman is not subject to ordinary speed limits nor deemed negligent for fast driving), did not cure the error.

There is no doubt but that failure to instruct upon the proper standard of care to which a defendant should be held is usually reversible error, for it is improper that a jury should be allowed to hold against a man when they were given the wrong standard by which to measure his conduct. But we do not believe that such is the case here. The intent of section 66-105, quoted in part supra, is not to hold patrolmen to less than the usual degree or standard of care. Instead, by its very words the section holds him to "due regard for safety" making exception only for the speed at which a patrolman's job sometimes requires him to travel. The last sentence of this section upon which defendants so heavily rely to carry their point refers only to the speed exception, and is by its own terms so limited. It would breach all rules of construction to apply the "reckless disregard" standard to any but this speed exception. For this reason we believe defendants' claim is unfounded, and the standard of due care, with its speed exception, to which patrolmen are held was amply covered in the instructions given.

While the defendants were sued as husband and wife, both the pleadings and the evidence conclusively establish that the tort sued upon was committed solely by the one defendant W. O. Ruth, while engaged in the business of the state as a patrolman. Nevertheless the verdict and minute order for judgment is "for the plaintiff and against the defendants, and each of them." The defendants unsuccessfully sought, on their motion for a new trial, to eliminate from the judgment the individual liability of the defendant Nellie Ruth, and the same question is now raised by one of the assignments of error on this appeal. We hold that their below-quoted proposition of law is sound:

"A verdict and judgment for damages resulting from the claimed negligence of a husband committed in the absence of his wife and not while acting as her agent, which runs against the husband and wife 'and each of them' in such manner as to be a lien upon and recoverable from the wife's separate property, is erroneous as against the wife."

In Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965, we held that a husband and wife are not jointly and severally liable for a tort committed by one without the knowledge or consent of the other. And in Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053, L.R.A.1915A, 491, Ann.Cas.1915D, 1197, we held that the husband is not personally liable for the torts of his wife.

By the same token we hold that the wife is not personally liable for the torts of her husband. The separate property of the wife is not liable for a community debt nor can a personal judgment be rendered against her thereon. Bird v. Steele, 74 Wash. 68, 132 P. 724; Anderson v. Burgoyne, 60 Wash. 511, 111 P. 777; Calvin Philips & Co. v. Langlow, 55 Wash. 385, 104 P. 610. The entry of a personal judgment against defendant Nellie Ruth was error and cannot be permitted to stand. Counsel for plaintiff concede this point. The utmost relief to which plaintiff was entitled as against the wife was a judgment establishing the community character of the indebtedness.

The last assignment of error attacks the verdict as being contrary to the weight of evidence and as appearing to have been given under the influence of passion and prejudice.

It is well settled in this jurisdiction that the trial court is the judge of the weight of evidence (Hyder v. Barton Hat Co., 29 Ariz. 380, 241 P. 959), and not the appellate court (C.I.T. Corp. v. First National Bank, 33 Ariz. 483, 266 P. 6); and that assignments of error based upon weight of evidence cannot be considered (Miller v. Stringfield, 45 Ariz. 458, 45 P. 2d 666) if there is any evidence to support the finding of the trial court even though the weight of evidence may be

against this finding. Hughes v. Cadena De Cobre Mining Co., 13 Ariz. 52, 108 P. 231.

"The trial judge, in effect, sits as a thirteenth juror, and if he believes a verdict is against the weight of the evidence it is his duty to set it aside, but we have also said that if he fails to do so, we cannot act on appeal because we think, either as individuals or as judges, that the weight of the evidence is with the losing party in the lower court." Richfield Oil Co. v. Estes, 55 Ariz. 81, 98 P.2d 851, 852.

While a verdict resulting from mistake, passion or prejudice will be set aside (Wright v. Young, 20 Ariz. 46, 176 P. 583), it can hardly be said that the verdict for $7500 in the case at bar for the permanent injuries here resulting to a 16-year-old boy is devoid of reason and the result of impassioned and prejudiced minds.

Having disposed of all the assignments and finding no prejudicial error in the record, except as to the separate judgment against the defendant Nellie Ruth, the judgment is modified to read: "that the plaintiff do have and recover of and from the said defendant W. O. Ruth, and of the community composed of W. O. Ruth and Nellie Ruth, husband and wife, the sum of $7500," and as to all other matters herein contained, it is affirmed.

STANFORD, C. J., and LA PRADE, J., concur.