226 P.2d 557

**SIMPSON et ux. v. SHAW.**

No. 5184.

Supreme Court of Arizona.

Jan. 18, 1951.

V. L. Hash, of Phoenix, for appellants.

Harold R. Scoville and Charles A. Stanecker, of Phoenix, for appellee.

RUSSELL, Superior Judge.

This was an action for conversion brought by C. E. Shaw, plaintiff, against L. D. Simpson and Bessie Simpson, his wife, defendants. Plaintiff alleged that on or about the 13th day of March, 1947, he purchased from one L. Blanton five milch cows which the defendants converted to their own use, to plaintiff's damage in the sum of $800. The case was tried to a jury and a verdict rendered in favor of plaintiff in the sum of $750.

The factual situation developed as follows: Plaintiff first purchased nine head of milch cows from one L. Blanton, for which he gave a security check, stating that he would return as soon as possible and pick up the cows. In the meantime, L. Blanton was to have the Bang's Disease test run on them. Mr. Haverty, a Deputy Arizona Livestock Inspector, before plaintiff's departure, inspected the ownership papers of L. Blanton, and also inspected the cows over to plaintiff. Plaintiff then returned home and informed his father, R. T. Shaw, of his purchase and three days later the father went to look at the cattle. There at L. Blanton's place he discovered three other cows and purchased these in addition to the initial nine, all for the total sum of $1816, the $16 being the veterinarian's fee for his examination of the cows.

Inasmuch as five of the twelve cows purchased reacted to the Bang's Disease test or were suspects, they could not be moved from Maricopa to Cochise County; and C. E. Shaw, therefore, left them with instructions to L. Blanton to try to find a buyer and let plaintiff know so that he, the plaintiff, could dispose of them. Plaintiff contends, in this regard, that Blanton was never authorized to make a sale of the cows.

Plaintiff testified at the trial, "I waited twelve days and did not hear anything from him and I came back up here. Mr. Blanton was gone, and I did not find the cows."

On or about the 9th day of April, 1947, R. T. Shaw (father of plaintiff) visited the *Sam* Blanton Dairy where the defendants reside. On his first visit no was home, but Mr. Shaw testified he identified plaintiff's cows by the brands and ear tag numbers. He then made a second trip to the *Sam* Blanton Dairy that evening about 8:30 o'clock and met the defendants, who informed him they had purchased the place and some cows that day from *Sam* Blanton and were in the process of their first milking. Mr. Shaw advised defendants that five head of the cows in the herd were cows that his son had purchased from L. Blanton.

Defendants refused to deliver up the cattle—hence this suit. This appeal was taken from the judgment entered in said cause, and from the order denying motion for a new trial.

Appellants have presented seven assignments of error of the trial court, which they are asking this court to review. They have also submitted several propositions of law, but a fair consideration of all of the questions submitted can be given by a review of the assignments of error, here set out.

*Assignment of Error No. I.* That the court erred in refusing to direct a verdict on behalf of Bessie Simpson for the reason that there is no evidence in the record showing that she participated in the tort claimed to have been committed by the husband, L. D. Simpson, and that the judgment rendered in said cause thereby binds the separate estate of the defendant Bessie Simpson.

*Assignment of Error No. II.* That the court erred in granting the motion of the plaintiff to correct the initials of the plaintiff R. T. Shaw to read C. E. Shaw and permit C. E. Shaw to obtain a judgment as a substituted plaintiff, for the reason that the court had made no order to the date of trial, substituting C. E. Shaw, a different person, as plaintiff, and that the effect of the same was to change not only the right of action, but the cause of action and effecting a complete change of parties plaintiff contrary to the common law and the statutes of the State of Arizona.

*Assignment of Error No. III.* That the evidence wholly failed to identify the cattle purchased by the defendant L. D. Simpson from Sam Blanton as being the cattle owned by plaintiff, or showing a right of possession of the cattle in plaintiff by a preponderance of the evidence.

*Assignment of Error No. IV.* That the court erred in denying defendants' motion for a directed verdict at the close of the whole case, for the reason that the plaintiff had wholly failed to carry the burden; that is to show that he was the owner of

the cattle which he claimed to own or that the cattle were in the possession of the defendants or either of them, or that the said cattle had been converted by the defendants or either of them.

*Assignment of Error No. V.* That the court erred in abusing its discretion in conducting a collateral trial on issues wholly outside the scope of issues, thereby confusing the jury and beclouding the issues.

*Assignment of Error No. VI.* That the court erred in rejecting the offer in evidence of Exhibit 5, to-wit: The cattle mortgage showing a chain of title for more than one year in and to the cattle as being in Sam Blanton, predecessor in interest to defendant.

*Assignment of Error No. VII.* That the court erred in rejecting defendants' Exhibit 2 offered in evidence, to-wit: the bill of sale from Sam Blanton to the defendant L. D. Simpson.

■ Appellants' Assignment of Error No. I is well taken. No separate judgment should have been lodged against Bessie Simpson. The husband L. D. Simpson is individually responsible for his tort, and the community is responsible for it for the reason that it was committed in behalf of the community and for its benefit. Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304.

■ We find no merit to appellants' Assignment of Error No. II. C. E. Shaw was the real party in interest which was well known to defendants long before the issues were settled and long before trial date. No prejudice resulted by the substitution of the name (initials).

■ Neither do we find any merit to appellants' Assignment of Error No. III, since the cattle in question were identified by the numbers on the tags placed in the ears of the cattle by the veterinarian who examined them for Bang's Disease and tuberculosis.

■ Assignment of Error No. IV raises the real question—that of ownership of the five head of cows, and here let us go further into the facts and circumstances out of which this action arose. The testimony of Mr. Shaw that he identified his cows by the ear tag numbers is somewhat disputed by the testimony of the Simpsons. However that may be, Mr. Simpson and Mr. Shaw went together to the office of the county attorney in Phœnix, Arizona, and had a warrant of arrest issued for L. Blanton and Sam Blanton, although neither party was ever apprehended.

Livestock Inspector Rees testified that he inspected the cattle over from Sam Blanton to Mr. Simpson; that Sam Blanton exhibited to him an inspection certificate indicating that the cattle had been inspected by Inspector Tucker from *some* seller, whose name he could not recall, to Sam Blanton.

Sam Blanton could not have been a bona fide purchaser for value without notice from L. Blanton, in that he had seen the

cattle at L. Blanton's place and had tried to purchase them from Shaw. Defendants did not explain how the cattle got out of the possession of L. Blanton. A bona fide purchaser from L. Blanton would acquire good title as against Shaw, see Section 52-527, A.C.A. 1939, but in the absence of any proof that Sam Blanton was the agent of L. Blanton, then the proposition of law that an individual can convey no better title to an item of property than that which he himself possesses must apply. See, e.g., Yates v. Russell, 20 Ariz. 338, 180 P. 910. The testimony of Inspector Rees that he was satisfied or was of the opinion that Sam Blanton had legally acquired title to the cows is not sufficient to establish a regular chain of title in Sam Blanton.

■ Concerning appellants' Assignment of Error No. V, we find that the court's cross-examination of some of the witnesses was prompted by the nature of the questions propounded by defense counsel. We are of the opinion that such cross-examination was not so extensive as to constitute error, but even if this were so, it was harmless in view of defendants' lack of proof showing a right of possession and ownership.

■ Likewise, on Assignment of Error No. VI, it was not error to reject the paid mortgage as evidence in this case, as there was no evidence that the five cows in question were a part of the ten cows mortgaged to the bank.

■ Assignment of Error No. VII goes to the rejection of defendants' Exhibit 2 in evidence. Simpson's good faith was not in issue and was admitted. The bill of sale had no evidentiary value in that defendants had not shown any title in the seller (Sam Blanton) from whom they assertedly acquired title.

Having disposed of all of the assignments, and finding no prejudicial error in the record except as to the separate judgment against the defendant Bessie Simpson, the judgment is modified to read: That the plaintiff do have and recover of and from the said L. D. Simpson individually and of the community composed of L. D. Simpson and Bessie Simpson, husband and wife, the sum of $750, together with interest thereon at the rate of 6 per cent per annum from April 10, 1947, until paid, and for costs of court.

Judgment affirmed as modified.

UDALL, C. J., and STANFORD and LA PRADE, JJ., concurring.

DE CONCINI, Justice (specially concurring).

I concur in both the result and the reasoning of the foregoing opinion. However, for the purpose of clarity I would like to amplify my reasons in respect to the disposition of assignment No. IV.

From a reading of the opinion in that particular, it may appear we are nullifying

the effect of Sec. 52-527, A.C.A. 1939, by placing too onerous a burden on the second innocent purchaser. Such is not the case.

In this case we have two innocent purchasers, Shaw and Simpson. Shaw purchased from L. Blanton and left the cows in the latter's possession. Had L. Blanton sold to Simpson directly, then Simpson would have prevailed both under Section 52-527, supra, and under the principle announced in our recent case of Kelsoe v. Grouskay, 70 Ariz 152, 217 P.2d 915.

Simpson, the second innocent purchaser, purchased the cattle from Sam Blanton, the brother of L. Blanton. The burden of proof then was on Simpson to show that either L. Blanton and Sam connived to defraud Simpson, or that Sam was the agent of L. Blanton and as such committed a wrong. In either case the wrongful acts would then be imputed to Shaw under Sec. 52-527, supra.

The situation is one in which the first purchaser has established his claim and title but in which the second purchaser attempts to show that the former should now be estopped to assert his claim because the first purchaser by allowing the seller to retain possession made it possible that a fraud be perpetrated against the latter. Simpson, therefore, had the burden of showing facts making it equitable to invoke the statutory rule of estoppel in his favor.

In this case the second purchaser has not affirmatively shown his chain of title from L. Blanton, who is concededly a prior possessor and from whom both Shaw and Simpson, therefore, must trace title. To hold now in favor of Simpson on his proof would be to estop Shaw on the basis of pure conjecture as to how the cows went out of L. Blanton's possession and came into the possession of Sam Blanton.