469 P.2d 467

**Dorothy REESE, individually and as Executrix of the Estate of Ferdinand Reese, deceased, Appellant,**

v.

**Paul D. CRADIT and Janet Cradit, husband and wife, Appellees.**

**No. 2 CA–CIV 700.**

Court of Appeals of Arizona,
Division 2.

May 11, 1970.
Rehearing Denied Oct. 13, 1970.
Review Denied Dec. 8, 1970.

234

Merchant, Lohse & Bloom, by Ashby Lohse, Tucson, Hirsch & Pakula, by Arthur Hirsch, Tucson, for appellant.

H. Earl Rogge, Jr., Tucson, for appellees.

HATHAWAY, Judge.

The appellees, Paul and Janet Cradit, filed a lawsuit against Mr. and Mrs. Julius S. Kleinman, Mr. and Mrs. Sidney Katz, and Mr. and Mrs. Ferdinand Reese, as the aftermath of an attempted land exchange with Ferdinand and Dorothy Reese. After the suit was instituted the defendant Ferd-

inand Reese died, his wife Dorothy qualified as executrix of his estate and was substituted in the lawsuit. No creditor's claim was filed against the estate by the plaintiffs. After a jury trial, a plaintiff's verdict was returned. This appeal is from the judgment entered on that verdict and from the denial of the usual post-trial motions.

The property exchanged by the Cradits was a motel located on the Benson Highway in Tucson and in which they had a $23,000 equity. In 1961 they listed the motel for sale with Strout Realty. Mr. Katz, an agent working in the Ferdinand Reese real estate office learned of the listing and went to the Cradits with Mr. Gore from Strout Realty. At that meeting Mr. Katz suggested an exchange of property— the Cradit's motel in exchange for 80 acres of land in New Mexico which Katz represented to them was owned by Mr. Kleinman. This New Mexico land was in fact owned by Mr. Reese. Various other representations concerning the New Mexico property were made by Mr. Katz to the Cradits. These will be discussed later.

The New Mexico land was part of a 640 acre parcel which Mr. Reese and 3 others had acquired in Taos County, New Mexico, by a contract of sale on September 11, 1961 for $11,520 total consideration. Of that price $3,340.80 had been paid in cash and the balance was carried under two realty contracts secured by that property. In October 1961 Mr. Katz negotiated an exchange of 80 acres for the plaintiffs' equity in the motel. On October 27, 1961 the Cradits and Julius Kleinman entered into a Deposit Receipt & Agreement whereby the exchange was formally agreed upon. No money passed in the exchange except the real estate commission in the sum of $1,950 paid by the Cradits. Half of the commission went to Strout Realty and the other half was divided between Mr. Katz and Mr. Reese.

The New Mexico property was conveyed by Mr. Reese to Mr. Kleinman on December 16, 1961 and on that same day the Cradits released the motel property from

escrow and delivered the deed to Mr. Kleinman even though the New Mexico property had not been conveyed to them.

On December 19, 1961 Mr. Kleinman transferred the motel to a Mr. Handmacher. The testimony was that Mr. Kleinman was a strawman in these real estate transactions and that consideration for the sale to Handmacher went to Reese.

Several questions are raised by the appellant. The first contention is that a suit to rescind a contract for the sale of land is an action based on contract requiring proof of creditor's claims under A.R.S. § 14–570 and § 14–576.

A.R.S. § 14–570 provides in part:

"Claims based on contracts; failure to present as bar; exception

A. All claims arising upon contracts, whether due, not due or contingent, shall be presented to the executor or administrator within the time limited in the notice to creditors, and any claims not no presented is barred forever, * * *."

A.R.S. § 14–576 provides:

"Action pending against decedent at time of death; presentment of claim

If an action is pending against decedent at the time of his death, plaintiff shall in like manner present his claim to the executor or administrator for allowance or rejection as required in other cases. No recovery shall be had in the action unless proof is made of the presentation."

■ Tort claims do not come within the provision of the foregoing sections. Brainard v. Walters, 85 Ariz. 60, 331 P.2d 595 (1958). Contract and tort claims are not, however, so inconsistent as to preclude their joinder where both arise from the same transaction or from transactions connected with the subject of the action. 1 Am.Jur.2d Actions § 106.

■ Count One of the complaint alleges the real estate transaction described in the Deposit Receipt & Agreement; that this property was supposed to be free and clear of encumbrances and with full warranty of title; and that this property was not free and clear of encumbrances and title insurance could not be obtained. The prayer asks for the relief of the agreement and if recission was not possible for the return of the plaintiffs' equity in the property transferred and for punitive damages.

In their brief the plaintiffs contend that Count One was a suit for recission or damages arising out of false representations, but this contention is not confirmed by the pleadings. While recission may be a remedy for fraud, Kahn v. Lischner, 128 Cal.App.2d 480, 275 P.2d 539 (1954), recission is generally thought of as a contractual remedy. 17 Am.Jur.2d Contracts § 482, § 501. This count appears to have arisen from an agreement between the parties requiring the presentation of a claim under A.R.S. § 14–570 and § 14–576. Since no claim was made it is barred. Ray v. Rambaud, 103 Ariz. 186, 438 P.2d 752 (1968); In re MacDonald's Estate, 4 Ariz. App. 94, 417 P.2d 728 (1966); Latham v. McClenny, 36 Ariz. 337, 285 P. 684 (1930).

■ Count Two of the complaint adopted by reference allegations of Count One and further alleges that the plaintiffs were induced to enter into the contract on the false representations of the defendants; that these representations were false and fraudulently made with the intent that they be relied upon by the plaintiffs; that the plaintiffs did rely and were induced to enter into the contract by those representations which the defendants knew were false. This count demands as relief damages, special and punitive.

"Actions ex delicto have been classified fundamentally as (1) breaches of duty by wrongful means, as in cases of fraud, * * *." 1 Am.Jur.2d Actions § 8

In analyzing the plaintiffs' grievances in Count Two, Morriss v. Barton, 200 Okl. 4, 190 P.2d 451 (1947), we conclude this action is based on tort and no creditor's claim need be filed.

■ It is next contended that since the plaintiffs knew Katz was a real estate agent working for Reese they would not

have the right to rely on Katz's representations. There is testimony that Katz had represented to the Cradits that the New Mexico property had been purchased by Kleinman many years before; that this property was free and clear of all encumbrances or title defects; that the property was worth $300 an acre and that the property had been subdivided and streets were in. One of the nine elements [1] to establish fraud is one's right of reliance on the representations. Moore v. Meyers, 31 Ariz. 347, 253 P. 626 (1927). Mere representations as to value are generally considered expressions of opinion and will not support a claim for fraud. Ulan v. Richtars, 8 Ariz.App. 351, 446 P.2d 255 (1968). In Carrel v. Lux, 101 Ariz. 430, 420 P.2d 564 (1966) the court said:

"It is our opinion that where a real estate salesman, who has a motive of monetary gain through receipt of a substantial commission, makes a statement to a proposed buyer describing the property to be sold, such would support a finding by the jury that the person making the statement intended the proposed buyer to rely upon it." 101 Ariz. at 439, 420 P.2d at 573.

There, the court also quoted with apparent approval the following rule taken from 23 Am.Jur., Fraud and Deceit § 161:

"The rule is followed at the present time in practically all American jurisdictions, in respect of transactions involving both real and personal property, that one to whom a positive, distinct, and definite representation has been made is entitled to rely on such representation and need not make further inquiry concerning the particular facts involved." 101 Ariz. at 439, 420 P.2d at 573.

Having made representations to the plaintiffs which appear to go far beyond the representations in either Ulan v. Rich-tars, supra, or Carrel v. Lux, supra, the plaintiffs were entitled to rely on the representations and were not required to make further inquiry concerning the particular facts involved.

Concluding, as we do, that the plaintiffs had the right to rely upon the various representations made by Katz and this appearing to be the only issue raised by defendant Reese in regard to plaintiffs proving the nine necessary elements of fraud, we do not feel it necessary to consider whether or not a fiduciary or confidential relationship existed forming the basis for a constructive fraud. See Klinger v. Hummel, 11 Ariz.App. 356, 464 P.2d 676 (1970).

■■■ The plaintiffs gave Katz a covenant not to execute in consideration of $2,000. The contention is made that as Katz's principal, Reese is also released from liability because of this covenant not to execute entered with his agent. The Cradits argue that the covenant should not be construed as a release of all parties but should only reduce their recovery by the amount of the consideration given for the covenant.

Our Supreme Court dealt with a covenant not to sue in Fagerberg v. Phoenix Flour Mills Company, 50 Ariz. 227, 71 P.2d 1022 (1937), and a covenant not to execute was considered in Riexinger v. Ashton Company, 9 Ariz.App. 406, 453 P.2d 235 (1969). Covenants of this type are resorted to in an effort to avoid pitfalls in the common law rule that the release of one joint tort-feasor releases all. A covenant not to sue or not to execute is not considered a release of tort liability and rights are thereby preserved against joint tort-feasors not a party to the covenant. Here we must determine whether Reese's liability is based entirely on the doctrine of *respondeat superior*, i. e., imputation to him of tortious conduct of his agent; or if he stands as

---

1. (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

a joint tort-feasor, i. e., did he participate in and further the fraud. If a liability is founded on the former, then we are confronted with the question: Does a covenant with the agent release the principal? It would appear that the general rule is that the principal's liability, derivative from the agent's wrongdoing, is secondary and is extinguished when a verdict exonerates the agent, Inter State Motor Freight System v. Henry, 111 Ind.App. 179, 38 N.E.2d 909 (1942), cited with approval in Hing v. Youtsey, 10 Ariz.App. 540, 460 P.2d 646 (1969) and in DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342 (1945). It logically follows that if the injured party executes a covenant not to sue or not to execute with the agent, this covenant necessarily releases the principal. Cox v. City of Freeman, Missouri, (8th Cir. 1963), 321 F.2d 887; Terry v. Memphis Stone and Gravel Company, (6th Cir. 1955), 222 F.2d 652; Restatement of Agency 2d, § 211, p. 450.

We have concluded that the record amply shows Reese's active participation in the fraud. He was an owner of the New Mexico land and concealed this fact by transferring to the "strawman" establishing a basis for the Kleinman story. He then presumably instructed Katz to make the offer. A real estate broker offering through a "strawman" 80 acres of raw land recently purchased for $1,440 on a contract for a $23,000 equity in a motel does not ring of an open-handed square deal. The jury might well conclude that the broker, ordinarily the director of his salesman's activities, masterminded the scheme. He received the full consideration in the exchange and even participated in the real estate commission.

■■■ The appellant next contends that the judgment should not stand against Dorothy Reese in her individual capacity and against her separate property. We agree with this contention, for there is no evidence that Dorothy Reese, as an individual, participated in the fraud on the appellees. The community property of the husband and wife as it existed at the time of the fraud is liable for community debts contracted by the husband during coverture. Individually, Dorothy Reese should not be held responsible for the action of her husband except as a member of the community, and therefore the verdict as to her must be reversed. A.R.S. § 25–214, subsec. B, Simpson v. Shaw, 71 Ariz. 293, 226 P.2d 557 (1951); Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304 (1947); Babcock v. Tam (9th Cir., 1946) 156 F.2d 116.

■■■ Appellant's final contention is that if one or more of the counts were erroneously submitted to the jury a general verdict for the plaintiff cannot be sustained even though the jury's verdict can be sustained by the evidence on one of the counts. However, in 89 C.J.S. Trial § 536 a, pp. 256–257, it is stated:

"Except where a statute makes it mandatory to submit a cause for a special verdict or special findings, a party desiring a special verdict or answers to special interrogatories must request the submission of such interrogatories or the finding of a special verdict, and he may not complain of a failure to take a special verdict or to have interrogatories answered where he has made no request therefore."

Also in 89 C.J.S. Trial § 505, p. 177:

"However, it is more commonly held that, in the absence of a request for an instruction that the jury bring in a separate verdict on each count, or motion for a directed verdict on each count, where several counts, issues, or theories are tried and submitted to the jury, the general verdict will stand if the evidence on one count, issue, or theory is sufficient to sustain the verdict, * * *."

Arizona apparently has followed this rule in the past. See American Surety Company of New York v. Hatch, 24 Ariz. 66, 206 P. 1075 (1922). We believe this is the better rule and reject the appellant's contention. Granone v. County of Los Angeles, 231 Cal.App.2d 629, 42 Cal.Rptr. 34 (1965); Whitaker v. Creedon, 99 Ga. App. 228, 108 S.E.2d 335 (1959); Louisville

& Nashville Railroad Company v. Rochelle (6th Cir., 1958), 252 F.2d 730; Messier v. Zanglis, 144 Conn. 449, 133 A.2d 619 (1957).

The fraud count as to Dorothy Reese, as executrix of the Estate of Ferdinand Reese, deceased, is affirmed, and reversed as to Dorothy Reese in her individual capacity.

KRUCKER, J., and ROGERT E. Mc-GHEE, Judge of the Superior Court, concur.

NOTE: Chief Judge LAWRENCE HOWARD having requested that he be relieved from consideration of this matter, Judge ROBERT E. McGHEE was called to sit in his stead and participate in the determination of this decision.