IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DIGITAL SYSTEMS ENGINEERING, INC., *Plaintiff/Appellee*,

*v.*

JOHN MORENO and BERNADETTE BRUCE-MORENO,
*Defendants/Appellants*.[1]

No. 1 CA-CV 16-0156
FILED 4-18-2017

Appeal from the Superior Court in Maricopa County
No. CV2007-005794
The Honorable Margaret Benny, Commissioner, Judge Pro Tem

**REVERSED; WRIT OF GARNISHMENT VACATED**

COUNSEL

Marko Law PLC, Phoenix
By Edward J. Marko
*Counsel for Plaintiff/Appellee*

Dickinson Wright PLLC, Phoenix
By Charles H. Oldham, Amanda E. Newman
*Counsel for Defendants/Appellants*

---

[1]     The caption has been modified to more accurately depict the relevance of the parties to this appeal.  The caption above should be used for all future filings in this matter.

---

## OPINION

Judge Jon W. Thompson delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1 Appellants, John Moreno (John) and his wife Bernadette Bruce-Moreno (Bernadette) (collectively, the Morenos) appeal from the trial court's order permitting Digital Systems Engineering, Inc. (DSE) to garnish John's wages in his current marital community with Bernadette, whom he remarried after divorce, to fulfill his liabilities associated with the Morenos' prior marital community, despite a contrary stipulated judgment tantamount to an agreement by DSE to limit the scope of John's liability. For the reasons that follow, we reverse the trial court's order and vacate the garnishment writ.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In April 2007, DSE filed a lawsuit against Bernadette, who is its former employee, and her husband, John. In the lawsuit, DSE alleged that from 2001 to 2005 Bernadette engaged in fraudulent transactions causing DSE nearly $300,000 in damages. DSE sought relief from both Bernadette and John in their individual capacities and from their marital community. After a bench trial in 2008 and 2009, the superior court found that John was not individually liable, and entered judgment, on September 4, 2009, only against his undivided one-half interest in his marital property with Bernadette.[2]

¶3 John appealed the judgment and DSE filed a cross-appeal challenging the court's ruling that John was not individually liable. On appeal, this court affirmed both the judgment on the fraud claim and the determination that John was not individually liable. *See Digital Sys. Eng'g, Inc. v. Bruce-Moreno*, 1 CA-CV 09-0574, 2010 WL 5030808, at * 7, ¶ 36 (Ariz. App. Nov. 16, 2010). However, we reversed the court's damages award and

---

[2] The superior court originally entered judgment in July 2009. It amended that judgment in September 2009 because the original judgment incorrectly stated that John had been found individually liable.

remanded the case for further determinations as to the amount of DSE's damages on the fraud claim and directed that the judgment granted to DSE against John for unjust enrichment be vacated. *Id.*

¶4 Back in the trial court, in April 2011, DSE filed a Request for Judicial Notice, asking the court to take judicial notice of the fact that the Morenos had entered into a marital settlement agreement and that the marriage was dissolved on September 8, 2009. On August 3, 2011, the court took judicial notice, as DSE requested.

¶5 Before the trial to determine DSE's damages, DSE and John entered a stipulated judgment, on September 2, 2011, which the court filed on September 7, 2011. As relevant here, the Stipulated Judgment provided:

> JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF [DSE] AND AGAINST JOHN MORENO'S *UNDIVIDED ONE-HALF INTEREST IN HIS MARITAL COMMUNITY WITH BERNADETTE BRUCE-MORENO* . . .
>
> THE CLAIM AGAINST JOHN MORENO'S SOLE AND SEPARATE PROPERTY IS DISMISSED WITH PREJUDICE.

(Emphasis added.)

¶6 The Morenos remarried two years later. In December 2015, DSE served a Writ of Garnishment on John's employer. The Morenos objected to the garnishment on the grounds that: (1) the Stipulated Judgment is, by its terms, limited to recovery from John's interest in the prior marital community; (2) under Arizona law, the Morenos' remarriage after divorce did not "resume" their prior marital community, but instead created a new and distinct community, beyond the reach of the Stipulated Judgment; (3) John's current wages are property of the new community, and not the prior; and (4) Arizona law supports limiting an innocent spouse's liability to the community property that existed at the time of any tortious acts. In response, DSE argued that the Stipulated Judgment was a community debt that the Morenos could not discharge in divorce and that John's wages are garnishable after divorce and remarriage.

¶7 A garnishment objection hearing was held on January 26, 2016. Relying on *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 898 P.2d 1005 (App. 1995), the superior court denied the Morenos' objection and affirmed the Writ of Garnishment, ordering that John's wages "are garnishable."

**¶8** The Morenos timely appealed the ruling. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21 (2016) and -2101(5)(c) (2016).[3]

## DISCUSSION

**¶9** In relying on *Hamlin* in ruling John's wages are garnishable, the court specifically found that:

> [P]ursuant to *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 898 P.2d 1005 (Ariz. App. 1995), separate wages of a spouse can be garnished to satisfy the community obligation. The fraud claim created a community obligation for which John Moreno is jointly liable. *Id*. Divorce does not absolve spouses of community obligations, and a judgment creditor has the right to pursue collection from both spouses including garnishing wages to satisfy a community obligation. *Id*.

Because the court's ruling raises issues of law, we review de novo. *Citibank (Arizona) v. Bhandhusavee*, 188 Ariz. 434, 435, 937 P.2d 356, 357 (App. 1996). Ultimately, we hold that the trial court erred by relying on *Hamlin* in this context, and in simultaneously disregarding community property distinctions.

**¶10** We first address certain preliminary matters to clarify the arguments presented on appeal. DSE mischaracterizes the Morenos' argument in objecting to its garnishment of John's current wages. On appeal, DSE essentially purports that the Morenos ask this court to find that divorce and remarriage terminated John's obligation under the Stipulated Judgment. Not only would such an argument be unsupported by the chronological order of the facts in this case, it would broaden the scope of the issues the Morenos actually present. The record clearly shows the Morenos were divorced two years prior to the Stipulated Judgment. Thus, contrary to inferences that may be drawn from DSE's overarching argument, the evidence does not compel the conclusion that the Morenos divorced each other to avoid liability pursuant to a not-yet-existing

---

[3] We cite the current version of the applicable statutes, unless revisions material to this decision have occurred since the events in question.

Stipulated Judgment.[4]  As to the Morenos' related request, as properly presented, they ask this court, as they did the trial court, to limit enforcement of the Stipulated Judgment to its terms. The Stipulated Judgment was rendered specifically against John's "undivided one-half interest in his marital community with [Bernadette,]" and disclaimed any effort by DSE to execute on John's separate property.  The paramount issue before us is whether the superior court erred in relying on *Hamlin* for its ruling, which, as the court pronounced, stands for the proposition that "[d]ivorce does not absolve spouses of their community obligations." *Hamlin*, 182 Ariz. at 631, 898 P.2d at 1009.

**¶11**　　　　"[S]tipulation as to 'judgment' necessarily imports a finality of determination of the controversy" between parties. *Wolf Corp. v. Louis*, 11 Ariz. App. 352, 355, 464 P.2d 672, 675 (1970).  "If the trial court's finding is contrary to a deliberate stipulation, it must fall." *Id.*  A stipulation "constitut[es] an abandonment of any contention to the contrary," and is foreclosed from being repudiated on appeal. *Id.*  Accordingly, here, the Stipulated Judgment to which both John and DSE consented guides our analysis.

**¶12**　　　　The trial court's ruling improperly deflects the focus of the Morenos' objections from the language of the Stipulated Judgment, to an inquiry about whether divorce discharges community liabilities.  The court's ruling also fails to reflect this court's 2010 ruling limiting John's liability. *See Digital Sys. Eng'g, Inc.*, 1 CA-CV 09-0574, 2010 WL 5030808, at *7, ¶ 36 (affirming the ruling that "only [John's] undivided one-half interest in the marital community is liable for the judgment in this matter").  Moreover, *Hamlin* concerned a default judgment against a community while the parties were married, in contrast to the Stipulated Judgment here, which occurred after the Morenos had divorced. *See Hamlin*, 182 Ariz. at 630-31, 898 P.2d at 1008-09.  Therefore, it is irrelevant to this appeal.

**¶13**　　　　We agree with the Morenos that the Stipulated Judgment limits DSE's recovery from John to his "undivided one-half interest" in the only marital community to which the Stipulated Judgment could have referred. *See Reese v. Cradit*, 12 Ariz. App. 233, 238, 469 P.2d 467, 472 (1970)

---

[4]　　　Any argument that DSE may posit suggesting that John divorced Bernadette to avoid his liability pursuant to the Stipulated Judgment is speculative at best.  In fact, John's position on appeal is that "the Stipulated Judgment [declaring his liability] remains in effect." It is also noteworthy that DSE knew of the divorce prior to consenting to the Stipulated Judgment.

(stating that when one spouse did not participate in the tort of the other, the innocent spouse may be held liable only as a member of the community and such liability is limited to the extent of the community property "as it existed at the time of the [tort]"). The marital community formed by the remarriage between Bernadette and John in 2013 is a new and distinct community which, by the very terms of the Stipulated Judgment, does not fall within its ambit. *See, e.g.*, *Mejak v. Granville*, 212 Ariz. 555, 557, ¶ 9, 136 P.3d 874, 876 (2006) (applying the principle of interpreting a document "so that no provision is rendered meaningless, insignificant, or void[,]" to interpretation of a statute); *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 476, ¶ 45, 24 P.3d 960, 973 (App. 2010) (applying similar principles to contract interpretation).

¶14     DSE argues that John remarried Bernadette and now "seeks to reinstate the 'two-dollar bankruptcy'" which was repealed by Arizona's legislature in 1973. *See* A.R.S. § 25-216 (repealed 1973); A.R.S. § 25-215 (2007).[5] The "two-dollar bankruptcy" scheme involves a situation where an individual has separate debts that he then attempts to avoid by pointing to the fact of his subsequent marriage (or remarriage). Here, John has never been determined to be individually liable to DSE—every pertinent judgment, and most importantly, the Stipulated Judgment, foreclosed any possibility of John (or his separate property that had not been a part of the community) being so liable. *See supra* ¶¶ 2, 3, 5, and 12. Of course, John's earnings after divorce were his separate property, and after DSE's own stipulation, DSE could not have reached those earnings while John remained divorced. This point is bolstered by the fact that there is no evidence in the record that DSE attempted to garnish John's wages pursuant to his liability under the Stipulated Judgment during the time he was unmarried. It thus appears DSE's Writ of Garnishment rests on some novel legal claim that John's remarriage to Bernadette reactivates some foregone right to garnish his wages. Such a "reactivation" claim would be without legal grounding.

¶15     Therefore, in light of the Stipulated Judgment, we hold that the trial court erred in ruling that DSE could garnish John's wages, which constitute community earnings of the marital community existing as of 2013, to satisfy the community liabilities of the marital community that

---

[5]     Stating "[t]he community property is liable for *the premarital separate debts or other liabilities of a spouse*, incurred after September 1, 1973 but only to the extent of the value of that spouse's contribution to the community property which would have been such spouse's separate property if single." (Emphasis added.)

ended in 2009. Further, given our holding, we grant the Morenos attorneys' fees and costs pursuant to A.R.S. § 12-1598.07 (2016), in an amount to be determined upon compliance with Arizona Rule of Civil Appellate Procedure 21. We deny DSE's request for attorneys' fees, as sought pursuant to A.R.S. §§ 12-1598.07 (awarding costs and fees only to the prevailing party), -349 (2016) (allowing for fees where a party "[b]rings or defends a claim without substantial justification," among other things), and 13-2314.04 (2010) (discussing civil remedies a private person injured by racketeering may obtain).

## CONCLUSION

**¶16** For the foregoing reasons, we reverse the trial court's order rendering John's current wages garnishable. We vacate the Writ of Garnishment.



AMY M. WOOD • Clerk of the Court
FILED: AA